UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                           Chapter 7

WILLIAM N. MAVRELIS                                              Case No. 18-46430-ess

                         Debtor.
-----------------------------------------------------------------x
JAM 42ND ST. REALTY LLC.,
271 42ND STREET REALTY, LLC,
JAMES MAGRIPLES,
and ANDREW MAGRIPLES

                         Plaintiffs,

          -against-                                     Adv. Pro. No. 19-01014-ess

WILLIAM N. MAVRELIS,

                         Defendant.
-----------------------------------------------------------------x

## MEMORANDUM DECISION ON PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

Appearances:

David L. Barrack, Esq.                          Peter Corey, Esq.
Winslett Studnicky McCormick & Bosmer LLC       Michael J. Macco, Esq.
6 East 39th Street                              Macco Law Group, LLP
6th Floor                                       Suite 109
New York, NY 10016                              Islandia, NY 11749
 *Attorneys for Plaintiffs*                     *Attorneys for Defendant*

October 1, 2020

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

This adversary proceeding arises from an unsuccessful application for a New York City commercial real estate tax abatement that was filed more than twelve years ago, in March 2008. Since then, the path of this dispute has led the parties to New York state court, two bankruptcy cases, two adversary proceedings, and now, this motion for summary judgment.

The parties appear to agree that the tax abatement application was denied because it was not filed within the one-year time period required under New York's newly-adopted Industrial Commercial Abatement Program. But there, their agreement ends. The Plaintiffs claim, in substance, that they have suffered millions of dollars in damages due to Mr. Mavrelis' failure timely to file the application, and that his debt to them is therefore nondischargeable under Bankruptcy Code Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). Mr. Mavrelis disagrees that he is the cause of the late-filed application, and responds, in substance, that he did the best that he could in the face of the Plaintiffs' failure to provide him with the information required to proceed in a timely way.

The question posed by this Motion is whether the Plaintiffs are entitled to summary judgment on their nondischargeability claims. This, in turn, requires the Court to consider whether the Plaintiffs have shown that, as to at least one of those claims, there is no genuine dispute of material fact as to each of the elements of the claim, so that they are entitled to judgment as a matter of law.

## Jurisdiction

The Plaintiffs' nondischargeability claims arise under Bankruptcy Code Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6), and are core matters. 28 U.S.C. § 157(b)(2)(I). As core

matters, this Court has constitutional authority to enter a final judgment because the claims alleged in the complaint stem "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

For these reasons, this Court has jurisdiction to consider and enter judgment on these claims under Judiciary Code Section 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Background and Procedural History

### *Mr. Mavrelis' Retention by the Plaintiffs*

Plaintiffs James and Andrew Magriples (together, the "Magriples Plaintiffs") are individuals who, at all times relevant to this adversary proceeding, were the owners of commercial real property located at 271 42nd Street, Brooklyn, New York 11232 (the "Property"). Complaint, ECF No. 1 ¶ 12. Plaintiff JAM 42nd St. Realty, LLC ("JAM," and together with the Magriples Plaintiffs and 271 42nd Street Realty, LLC, the "Plaintiffs") was organized by the Magriples Plaintiffs to purchase and operate the Property. Defendant William N. Mavrelis was, at all relevant times to this adversary proceeding, an attorney admitted to practice law in the State of New York with a place of business in Queens County. The Complaint states that Mr. Mavrelis "held himself out to the public as an attorney who 'specializes' in the real estate tax abatement and incentive programs offered within the City of New York." Compl. ¶ 29.

This adversary proceeding arises from the Plaintiffs' retention of Mr. Mavrelis on or about March 19, 2008 for the purpose of seeking a tax abatement for the Property. On that date, the Plaintiffs met with Mr. Mavrelis at his office, executed an engagement letter, and paid Mr.

Mavrelis a $1,500 retainer.  Compl. ¶¶ 31-32, 35.  The Plaintiffs state that they retained Mr.

Mavrelis for his apparent expertise in tax abatement matters, claiming that Mr. Mavrelis' website

touts his qualifications as follows:

> Mr. Mavrelis has extensive and varied experience in real estate transactions and specializes in the real estate tax abatement and incentive programs offered within the City of New York.  Mr. Mavrelis is thoroughly knowledgeable in the field of real estate tax abatements and incentives, including the ICAP (formerly ICIP), 421-a and J-51 programs.  He has prepared, filed and received hundreds of real estate tax abatements, Certificate of Eligibility, for projects throughout the five boroughs of New York.

Compl. ¶ 30.

> The Plaintiffs also allege that Mr. Mavrelis:

> held himself out to the public, on his website, in general, and specifically to the Plaintiffs, as an expert with great experience in obtaining tax abatements such as the one sought for the Brooklyn Property.  [Mr. Mavrelis] had 20 years' experience handling applications for abatement under programs applicable to the Brooklyn Property.  [Mr. Mavrelis] advised the Magriples that the Brooklyn Property should be transferred to a separate company.  Messrs. Magriples formed the 271 42nd Street Realty, LLC for this purpose and transferred the Brooklyn Property to that company.

Compl. ¶ 13.

The Plaintiffs note that Mr. Mavrelis did not operate his law practice through a

corporation or other entity.  They also state that Mr. Mavrelis did not advise them that he did not

have malpractice insurance at the time of his retention, and that they would not have retained

him if they had known this information.  Compl. ¶ 34.

_Mr. Mavrelis' Representation of the Plaintiffs, and the Denial of the ICAP Application_

The Complaint states that the Property "is in an area which qualified for the Brooklyn

Industrial Zone Real Estate Tax Abatement offered by the City of New York Department of

Finance known as [the] Industrial Commercial Abatement Program ('ICAP')."  Compl. ¶ 38.

The ICAP program "provides abatement for property taxes for periods up to 25 years."  Compl. ¶

39.  "ICAP replaced the Industrial and Commercial Incentive Program ("ICIP") which ended in 2008."  Compl. ¶ 40.  The Plaintiffs allege that "the Defendant knew that the ICIP program was changed to ICAP in 2008."  Compl. ¶ 45.

The Plaintiffs state that "the rules of the ICAP program require an applicant to file an ICAP preliminary application," and that "a final application must be filed within one year from the building permit issuance date in order to qualify."  Compl. ¶¶ 41-42.  The Plaintiffs allege that Mr. Mavrelis filed the preliminary application with the City of New York Department of Finance on behalf of JAM on or about March 24, 2008, under the previous ICIP program, and that the ICIP program was changed to ICAP later in 2008.  Compl. ¶¶ 43, 45.  The Complaint states that the first building permit on the project was issued by the City of New York Department of Buildings on or about July 22, 2010.  Compl. ¶ 44.  And the Plaintiffs allege that Mr. Mavrelis failed to file a final application pursuant to ICAP until on or about March 6, 2012, long after the one-year deadline set by ICAP.  Compl. ¶¶ 47, 48.

The Department of Finance informed Mr. Mavrelis via e-mail on July 17, 2012 that the final application was denied because it was filed after the one-year deadline from the date of issuance of the July 2010 building permit.  Compl. ¶¶ 49-50.  The Plaintiffs allege that Mr. Mavrelis did not advise them of the denial for some time, as he sought a second review of the ICAP application from the Department of Finance in 2012.  Mr. Mavrelis was informed by a Department of Finance e-mail dated August 6, 2012 that the one-year deadline ran from the issuance of the July 2010 work permit, and was later informed that the denial could not be reversed due to the failure to file the final application within one year of the issuance of the permit.  Compl. ¶¶ 57-58.

The Plaintiffs allege that Mr. Mavrelis made several misrepresentations to them about the denial. The Complaint states that Mr. Mavrelis misled the Plaintiffs' project manager in a November 16, 2012 e-mail, in which he "affirmatively stated that the final application was filed on February 28, 2011 and not March 6, 2012 (as stamped on the filed copy)." Compl. ¶ 54. The Plaintiffs e-mailed Mr. Mavrelis for an application status update in February 2013, and followed up with a letter in March 2013. Compl. ¶¶ 60-61. The Plaintiffs allege that Mr. Mavrelis again lied to them in an e-mail dated April 17, 2013, stating "I have yet to receive an official reply to this file." Compl. ¶ 62. The Plaintiffs allege that Mr. Mavrelis did not inform them of the ICAP application denial until an e-mail dated May 16, 2013. Compl. ¶ 63.

_The State Court Action and Mr. Mavrelis' First Bankruptcy Case_

The Plaintiffs commenced an action against Mr. Mavrelis in New York State Supreme Court, Kings County on April 2, 2015, under case heading and number _James Magriples, et al. v. William N. Mavrelis,_ Index No. 503888/2015 (the "State Court Action"), asserting claims for breach of duty and negligence. Memorandum of Law in Support of Plaintiffs' Motion for a Partial Summary Judgment (the "Plfs' Mem."), ECF No. 13 at 4. The Plaintiffs state that their "claims for loss of yearly tax reduction and for lost value of the Brooklyn Property are approximately $1,300,000 with costs from litigation." Compl. ¶ 14. The State Court Action "was litigated for approximately three years, with discovery being completed, including depositions of the Plaintiffs and the Defendant, and the creation of expert reports." Plfs' Mem. at 4.

The State Court Action was ready for trial when Mr. Mavrelis filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court, on January 5, 2018. _In re William N. Mavrelis_, Case No. 18-40052, ECF No. 1 (Petition); Plfs' Mem. at 4-5. This

bankruptcy case triggered the automatic stay, and stayed the State Court Action.  The Plaintiffs

filed Proof of Claim 6-1 in that case in the amount of $1,382,438, based upon the damages

resulting from Mr. Mavrelis' alleged "Malpractice, Breach of Duty and Fraud committed by the

Debtor."  *In re Mavrelis*, Case No. 18-40052, Proof of Claim 6-1.  *See* Plfs' Mem. at 5.

On April 6, 2018, the Plaintiffs filed a complaint in the first bankruptcy case, seeking the

same relief that they seek in this adversary proceeding.  *JAM 42nd Street Realty LLC, et al. v.*

*Mavrelis,* Adv. Pro. No. 18-01039, ECF No. 1 (Complaint).  But Mr. Mavrelis' first bankruptcy

case was dismissed voluntarily, upon his motion, by order dated August 15, 2018.  *In re*

*Mavrelis,* Case No. 18-40052, ECF No. 27 (Order Voluntarily Dismissing Case).  Mr. Mavrelis

did not receive a discharge in that case, and the adversary proceeding was dismissed as moot by

order dated August 30, 2018.  *JAM 42nd Street Realty LLC v. Mavrelis,* Adv. Pro. No. 18-01039,

ECF No. 11 (Notice of Dismissal Endorsed and So Ordered by Court).

*This Bankruptcy Case and Adversary Proceeding*

On November 5, 2018, approximately two months after his first bankruptcy case was

dismissed, Mr. Mavrelis filed a petition for relief under Chapter 7 of the Bankruptcy Code in this

Court.  *In re William N. Mavrelis*, Case No. 18-46430, ECF No. 1 (Petition).  The State Court

Action was pending when this petition was filed, and was once again stayed.  The Plaintiffs filed

a timely proof of claim in the amount of $1,382,438, again based on Mr. Mavrelis' alleged

"Malpractice, Breach of Duty and Fraud committed by the Debtor."  *In re Mavrelis,* Case No.

18-46430-ESS, Proof of Claim 1-1.  Mr. Mavrelis received a Chapter 7 discharge on February

14, 2019.  *In re Mavrelis*, Case No. 18-46430, ECF No. 17 (Order Discharging Debtor).

On February 8, 2019, the Plaintiffs commenced this adversary proceeding by filing a

complaint against Mr. Mavrelis.  ECF No. 1 (Complaint).  In the Complaint, the Plaintiffs seek a

determination that the debt owed by Mr. Mavrelis to them resulting from the late-filed ICAP

final application, rejection of that application, and Mr. Mavrelis' actions following the rejection,

is nondischargeable under Bankruptcy Code Section 523(a)(2)(A) because the debt is for money

"obtained by false pretenses, a false representation, or actual fraud," Bankruptcy Code Section

523(a)(4) because the debt is one "for fraud and defalcation while [Mr. Mavrelis was] acting in a

fiduciary capacity," and Bankruptcy Code Section 523(a)(6) because the debt is for "willful and

malicious injury caused by [Mr. Mavrelis]."  Compl. ¶¶ 72, 76, 80.

  The Plaintiffs state that Mr. Mavrelis' debt to them arises, in substance, from the

following sequence of events:

> The Defendant proceeded to prepare and file an application on behalf of the
> Plaintiffs pursuant to [the] ICIP rebate program . . . on or about the 18th day of
> March 2008.  The application was prepared properly and all information
> necessary for the filing was provided by the Plaintiffs to the defendant in a timely
> manner.  The application was denied by the City of the New York for the sole and
> single reason that it was filed late by the Defendant.  The Defendant not only filed
> it late, which is a jurisdictional issue which cannot be overcome, but also hid the
> fact from the Plaintiffs while he tried to fix this error.  The Plaintiffs' claims for
> loss of yearly tax reduction and for lost value of the Brooklyn Property are
> approximately $1,300,000 with costs from litigation.

Compl. ¶ 14.

  The Plaintiffs also state that "the Defendant admitted in his deposition testimony in [the

State Court Action] that he missed the jurisdictional filing date.  Other than being filed late, the

final application was properly prepared.  If timely filed, it would have been approved and the tax

abatement granted."  Compl. ¶ 15.

  On March 13, 2019, Mr. Mavrelis filed an answer to the Complaint.  ECF No. 4

(Answer).  In the Answer, Mr. Mavrelis denies the allegations that he "obtained [money] by false

pretenses, a false representation, or actual fraud, committed a "fraud or defalcation [against the

Plaintiffs] while acting in a fiduciary capacity" or caused "willful and malicious injury" to the

Plaintiffs.  Answer ¶ 2 (citing Compl. ¶¶ 76, 80).  And Mr. Mavrelis asserts an affirmative

defense, that "the complaint fails to state a cause of action against [him]."  Answer ¶ 5.

_This Motion for Summary Judgment_

On December 30, 2019, the Plaintiffs moved for summary judgment on each of their

nondischargeability claims.  They filed the Memorandum in Support, together with a transcript

of Mr. Mavrelis' deposition in the State Court Action, taken on October 14, 2015, attached as an

exhibit.  The Plaintiffs state that they retained Mr. Mavrelis in March 2008 for the purpose of

obtaining a tax abatement for the Property, which "would be for 21 years and amount to a

present value of 1.2 million."  Plfs' Mem. at 7.  They also state that Mr. Mavrelis filed a

preliminary abatement application on behalf of the Plaintiffs pursuant to the then-active ICIP

program on March 24, 2008.  Plfs' Mem. at 9 (citing Plfs' Mem. Exh. A, Deposition of William

N. Mavrelis ("Mavrelis Depo.") at 12:3-12:17).  The Plaintiffs argue that at his deposition in the

State Court Action, Mr. Mavrelis acknowledged that the ICIP program did not have a one-year

limitation for the filing of an application, and that he had never had an application rejected under

ICIP.

The Plaintiffs state that Mr. Mavrelis also knew that the "ICIP program was changed to

ICAP in 2008 and that the ICAP had a strict one-year jurisdictional limit for filing under which

had three [applications] rejected for late filing."  Plfs' Mem. at 9 (citing Mavrelis Depo. at 16).

The Plaintiffs claim that the building permit was issued in July 2010, well after ICAP had

replaced ICIP.  Further, they argue that Mr. Mavrelis admitted that he filed the final application

on March 6, 2012, well outside of ICAP's strict one-year deadline.  Plfs' Mem. at 9 (citing

Mavrelis Depo. at 36 and 41).  And the Plaintiffs also claim that Mr. Mavrelis was in possession

of all information necessary to file the application in a timely manner.

The Plaintiffs also state that the Department of Finance informed Mr. Mavrelis by an e-mail dated July 17, 2012 that the final application had been denied, as it was filed more than one year from the date of the issuance of the July 2010 building permit.  Plfs' Mem. at 10 (citing Mavrelis Depo. at 53-54).  Mr. Mavrelis did not inform the Plaintiffs of the denial and sought a second review of the final application from the Department of Finance in August 2012, specifically with respect to the actual filing date.  Plfs' Mem. at 10 (citing Mavrelis Depo. at 53-54).  In response, the Department of Finance reaffirmed the denial via an e-mail to Mr. Mavrelis on August 6, 2012, stating in substance that the sole work permit issued for the Property was that issued in 2010, and that "'a final application should have been filed within one year of such issuance even if the permit was to be amended with a change in structural plan later.'"  Plfs' Mem. at 10 (quoting August 6, 2012 e-mail from City of New York, Department of Finance Administrator to Mr. Mavrelis).[1]

The Plaintiffs argue that Mr. Mavrelis subsequently engaged in a pattern of deceit in order to hide the fact of the August 2012 denial.  The Plaintiffs claim that they attempted to contact Mr. Mavrelis in February and March 2013 inquiring as to the status of the ICAP filing.  Mr. Mavrelis responded via an e-mail dated April 17, 2013, stating "'I have yet to receive an official reply to this file.'"  Plfs' Mem. at 11 (quoting April 17, 2013 e-mail from Mr. Mavrelis to the Plaintiffs).[2]  The Plaintiffs argue that this was a "blatant lie and breach of [Mr. Mavrelis'] duty to his client to communicate as a fiduciary."  Plfs' Mem. at 11.  And the Plaintiffs state that

---

[1]  This document is referenced and quoted in the Plaintiff's Memorandum but is not provided in evidentiary form.
[2]  This document is referenced and quoted in the Plaintiff's Memorandum but is not provided in evidentiary form.

Mr. Mavrelis finally informed the Plaintiffs of the denial of the final application due to the late filing via e-mail dated May 16, 2013.

The Plaintiffs argue that the debt owed by Mr. Mavrelis as a result of the rejected ICAP application should be deemed nondischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A), because he "made a false representation, which [he] knew to be a false representation at the time it was made, [he] made the representation with the intent to receive, [the Plaintiffs] justifiably relied on it, and . . . sustained a loss that was proximately caused by the false representation." Plfs' Mem. at 13. The Plaintiffs argue that Mr. Mavrelis made several false representations to them. First, they state, "while [Mr. Mavrelis] may have been an expert in the old ICIP program, he was not an expert in the new ICAP program, with its new one-year jurisdictional program. This is evidenced by three lawsuits against him for the same fiduciary failures." Plfs' Mem. at 13. Second, they argue that Mr. Mavrelis "falsely told them the application was timely filed while he later admitted in his deposition that it was not. He hid from his client that he was trying to get the determination overturned by the City of New York and continued to tell them that City of New York had not yet ruled on their application." Plfs' Mem. at 13. Finally, they state that Mr. Mavrelis "did not tell the Plaintiffs that he did not have malpractice insurance." Plfs' Mem. at 13.

The Plaintiffs argue that these misrepresentations were made with an intent to deceive, that Mr. Mavrelis had an obligation under New York and American Bar Association ethics rules to disclose his possible malpractice to his client, and that Mr. Mavrelis shirked his obligations for the sake of collecting legal fees and avoiding malpractice claims. And the Plaintiffs argue that they relied on Mr. Mavrelis' false representations, resulting in injury to them in the form of the denied ICAP application.

The Plaintiffs also assert that the debt owed to them by Mr. Mavrelis should be held nondischargeable pursuant to Bankruptcy Code Section 523(a)(4), because the debt is one "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Plaintiffs argue that Mr. Mavrelis became their fiduciary when they retained him as their counsel.

They also argue that Mr. Mavrelis committed fraud and defalcation against them several times, acting with the culpable state of mind required for fraud in each instance. The first fraud, the Plaintiffs state, occurred when Mr. Mavrelis held himself out as an expert in the ICAP program with 20 years of experience, when he knew that, in fact, he had no expertise in the new ICAP program. Plfs' Mem. at 16. The Plaintiffs again note that there were three lawsuits against Mr. Mavrelis arising from the ICAP program. Plfs' Mem. at 16. Second, Mr. Mavrelis knew that he had no malpractice insurance at the time of his retention, and yet he failed to disclose this fact to the Plaintiffs. Plfs' Mem. at 16. Additionally, Mr. Mavrelis knew that the ICAP application was filed late, beyond the strict one-year deadline imposed by the ICAP program, and yet he did not tell the Plaintiffs of this, hid the City's denial of the application from them, and told them that he was awaiting a final response from the City when he knew already that the denial had been upheld. Plfs' Mem. at 16.

Finally, the Plaintiffs argue that Mr. Mavrelis' debt should not be subject to discharge because it is a debt "'for willful and malicious injury by [Mr. Mavrelis] to [the Plaintiffs] or the property of [the Plaintiffs].'" Plfs' Mem. at 17 (quoting 11 U.S.C. § 523(a)(6)). They state that there "is little doubt that Mr. Mavrelis acted willfully injured the Plaintiffs and the injury was intended from his conduct. This was deliberate and intentional injury." Plfs' Mem. at 18. The Plaintiffs argue that Mr. Mavrelis injured them by falsely holding himself out as an expert in the

ICAP program, failing to disclose his lack of malpractice insurance, and neglecting to tell the Plaintiffs that the application was denied. *Id.*

### *Mr. Mavrelis' Opposition*

On January 24, 2020, Mr. Mavrelis filed a Memorandum of Law in Opposition to the Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment ("Def's Opp."), with transcripts of the depositions in the State Court Action of Mr. Mavrelis dated October 14, 2015 and Andrew Magriples, dated October 22, 2015 as exhibits. ECF No. 14.[3]

Mr. Mavrelis first identifies a series of uncontested facts in this case. He states that the parties' dispute stems from the late filing of the final tax abatement application for the Plaintiffs' Property. On or about March 19, 2008, the Plaintiffs retained Mr. Mavrelis under the ICIP program for a tax rebate on the Property. Def's Opp. at 4 (citing Mavrelis Depo. at 23). Mr. Mavrelis filed the preliminary application under ICIP on or about March 24, 2008. Def's Opp. at 4 (citing Mavrelis Depo. at 24-29). At some point in 2008, the ICAP program replaced ICIP, and ICAP differs from ICIP in that requires a final application to be filed within one year of the date of issue of the relevant building permits. He acknowledges that the final application was filed late, on or about March 6, 2012, more than one year after the permits were issued. Def's Opp. at 4. And he concurs that final application was rejected due to the fact that it was filed late. Def's Opp. at 4-5.

---

[3] In his opposition, Mr. Mavrelis states that "Defendant should be granted summary judgment, and this matter should be dismissed." Def's Mem. at 2. He also states that "the Defendant should be awarded Summary Judgment" because the Plaintiffs have not met their burden. Def's Mem. at 15. He does not separately move for this relief, and his request will not be considered further at this time.

Mr. Mavrelis argues that the reasons for the late filing of the final application for a tax abatement is the fundamental dispute between the parties. Mr. Mavrelis emphasizes that although he "advised the Plaintiffs to provide him with copies of permits with regard to the project, none were provided until it was too late." Def's Opp. at 5 (citing Mavrelis Depo. at 78-80). He also states that at the time of his retention, he "stressed the importance of the timing of pulling the permits relating to the Plaintiffs' project." Def's Opp. at 4 (citing Mavrelis Depo. at 33-34). Lastly, Mr. Mavrelis notes that "even though the parties knew the final application was late, they filed it anyway in an attempt to have it approved." Def's Opp. at 4 (citing Mavrelis Depo. at 41-42 and 89-90).

Mr. Mavrelis states that the Plaintiffs' proof of claim states that the two major components of their claim are the "'loss of tax abatement for 25 years'" and "'lost property value due to failure to obtain tax abatement.'" Def's Opp. at 5 (quoting *In re Mavrelis*, Case No. 18-46430, Proof of Claim 1-1). The "other components of the claim are for attorney's fees and costs." Def's Opp. at 5. He concludes that it is "uncontested that the final application was filed late, and this late filing is the cause of Plaintiffs' alleged damages." Def's Opp. at 5.

Mr. Mavrelis notes that the Plaintiffs commenced the State Court Action as a result of the damages incurred, that the sole cause of action alleged in the State Court Action complaint is for malpractice, and that the Plaintiffs have not asserted a claim for fraud or fiduciary defalcation in the State Court Action. He states that the parties have litigated the issues of malpractice and who was at fault for the late filing of the application. And he claims that in the State Court Action, he has consistently argued that the late filing was caused by the Plaintiffs' failure to provide documents and information to him in a timely fashion, so that he was unable to file the final application before to the deadline.

Mr. Mavrelis argues that in order to prove their case under Section 523, the Plaintiffs must show that the act of the late filing of the final application satisfies each of the elements of one of the enumerated grounds for nondischargeability set forth in the section.  He argues that the Plaintiffs have failed to do so and are attempting to "rewrite history in order to shoehorn an alleged malpractice action into one that falls under § 523 of the Bankruptcy Code."  Def's Opp. at 6.  Mr. Mavrelis states that the Plaintiffs have "conjure[d] up alleged misstatements and/or actions by [Mr. Mavrelis] in an attempt to make their case."  Def's Opp. at 6.  He "vehemently denies the Plaintiffs' allegations" as to his alleged misstatements and describes them as "a red herring, as the causation element is blatantly absent from each of the causes of action."  Def's Opp. at 6.

As to the Plaintiffs' nondischargeability claim under Section 523(a)(2)(A), as the result of a false representation, Mr. Mavrelis argues that the Complaint and the Motion are "devoid of any allegation, misrepresentation, or specificity as to time, place, speakers, and any other particulars of any alleged fraud or fraudulent conduct."  Def's Opp. at 8.  He also argues that he refutes each of the alleged misrepresentations alleged by the Plaintiffs, and that the Plaintiffs fail to establish a causal relationship between any of his statements and their claims for damages.

As to his alleged misrepresentation that he was expert in the ICAP program when he was retained by the Plaintiffs, Mr. Mavrelis states that it "is simply inconceivable that the Plaintiffs could have relied on anything relating to the [Mr. Mavrelis] and ICAP at the time they retained [Mr. Mavrelis]," for several reasons.  Def's Opp. at 9.  He notes that the preliminary application, was filed in March 2008 under the previous ICIP program, and that the ICAP program came into existence later that year.  Def's Opp. at 9.  Mr. Mavrelis also argues that while Plaintiffs use his present-day website information in support of their allegation that he held himself out as an

ICAP expert at the time, his website must have been different at the time the Plaintiffs retained him in 2008, because ICAP was not yet in existence.  Def's Opp. at 9.  And finally, he states that he has 20 years' experience in the area of tax abatements under different programs, and disputes making any misstatements or intentionally deceiving the Plaintiffs as to his background.  Def's Opp. at 9.

Next, Mr. Mavrelis disputes the Plaintiffs' assertion that he falsely told them that the application was timely filed, and only later admitted in his deposition that it was not.  He argues that the Plaintiffs' argument is not supported by the record, and that he never told the Plaintiffs that the application was timely filed.  And he states that during his deposition in the State Court Action, he "outlined how there was a meeting between the parties about the late filing before the Final Application was filed."  Def's Opp. at 9 (citing Depo. at 89-90).  Lastly, Mr. Mavrelis argues that even if he failed to inform the Plaintiffs of the late filing, this failure is not cause of the Plaintiffs' damages, as the event that triggered the damages – the late filing – had already occurred.  Def's Opp. at 9-10.

Finally, Mr. Mavrelis argues that his failure to disclose that he did not have malpractice insurance should not render the debt nondischargeable under Section 523(a)(2)(A).  He states that the Plaintiffs do not support their claim with reference to any requirement that an attorney needs to carry malpractice insurance, or an affirmative duty to disclose the absence of malpractice insurance to clients.  He also argues that while he did not have malpractice insurance at the time of his retention, he and the Plaintiffs did not discuss the question of malpractice insurance – that is, "there was no conversation between the parties relating to malpractice insurance."  Def's Opp. at 10.  Thus, "there was no false representation, no intent to deceive, and even if there was, this was not the cause of the Plaintiff's damages."  Def's Opp. at 10.

Mr. Mavrelis also argues that the Plaintiffs have failed to prove their nondischargeability claim under Bankruptcy Code Section 523(a)(4). He states that the Plaintiffs "have failed to show, and the facts do not support a claim, that the claim arose out of fraud or defalcation while acting in a fiduciary capacity." Def's Opp. at 10. Mr. Mavrelis acknowledges that he owed a fiduciary duty to the Plaintiffs as a result of their attorney-client relationship. Def's Opp. at 12. But he argues that the alleged actions and misrepresentations identified by the Plaintiffs either are not supported by the record or do not rise to the level of conduct necessary to prove a Section 523(a)(4) claim. And he argues that, assuming the allegations are true, the Plaintiffs have made a showing of negligence, which is insufficient to prove a claim under Section 523(a)(4).

More generally, Mr. Mavrelis states that in order to establish a claim for nondischargeability as a result of fraud or fiduciary defalcation under Section 523(a)(4), the Plaintiffs must prove that he "committed an intentional wrong, which, at a minimum, involves the conscious disregard of a 'substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." Def's Opp. at 12 (quoting *In re Moses*, 547 B.R. 21, 42 (Bankr. E.D.N.Y. 2016) (internal quotations omitted). Here, Mr. Mavrelis claims, the Plaintiffs have failed to show any intentional wrong, and thus have failed to meet their burden.

Lastly, Mr. Mavrelis argues that the Plaintiffs have not met their burden to prove their Section 523(a)(6) nondischargeability claim based on a willful and malicious injury. Mr. Mavrelis states that under this section, a debt "is nondischargeable only if the debtor intended injury to the creditor." Def's Opp. at 14 (citing *Peklar v. Ikerd,* 260 F.3d 1035 (9th Cir. 2001)). He also argues that "even if the debtor's acts were substantially certain to cause harm, the debt is dischargeable if the debtor did not know he would cause harm and did not intend to cause harm." Def's Opp. at 14 (citing *Carrillo v. Su,* 290 F.3d 1140 (9th Cir. 2002)). Here, Mr. Mavrelis

argues, the "Plaintiffs have failed to allege either any misrepresentation by [him] that is supported by evidence and have similarly not alleged any evidence of intent to injure the Plaintiffs." Def's Opp. at 14. Put another way, he argues that the Plaintiffs have not presented evidence that he acted willfully and maliciously to cause harm to them, and therefore they have not met their burden under Section 523(a)(6).

*Hearings and the Closing of the Record*

This Court heard arguments from the parties on this Motion for Summary Judgment on February 25, 2020, at which counsel for the Plaintiffs and Mr. Mavrelis appeared. On July 10, 2020, the parties agreed that the record was complete, and the record is now closed.

**The Applicable Law**

*The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all

reasonable inferences in favor of that party, and to eschew credibility assessments") (internal quotation omitted).  Where a plaintiff seeks summary judgment, it must demonstrate that there is no genuine dispute as to a material fact as to each element of its claim.  If it does not, then summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd in part and remanded in part*, 375 F. App'x 73 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4) (holding that summary judgment should be denied where the moving party does not meet its initial burden to show the absence of a genuine dispute as to a material fact with respect to each essential element of the claim).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial."  *Silverman v. United Talmudic Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  *See Anderson*, 477 U.S. at 249-50 (observing that "if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted").

"Statements in the pleadings alone are not sufficient to meet this burden."  *In re Allou Distribs., Inc.*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'"  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008), *aff'd sub nom. Eugenia VI Venture Holdings, Ltd. V. Glaser,* 370 F. App'x 197 (2d Cir. 2010) (quoting *Weinstock v.*

*Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003)).  "Unsupported allegations in the pleadings thus cannot create a material issue of fact."  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d at 117.

As the Supreme Court has observed, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A party "must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial."  *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  As one court observed, "[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law."  *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

Claims that address the defendant's intent raise additional considerations.  The Second Circuit has noted that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).  At the same time, the Second Circuit has observed that "[t]he summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  *Id*.  And "'[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the

credibility of the affiants.'"  *Orange Lake Assocs. v. Kirkpatrick*, 825 F. Supp. 1169, 1177 (S.D.N.Y. 1993) (quoting *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974), *aff'd*, 21 F.3d 1214 (2d Cir. 1994)).  *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (stating that there is a "'need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.'") (quoting *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2000)).  As one court has observed, "[a]lthough summary judgment may be warranted in certain circumstances even when examining state of mind, courts must be cautious in such cases, and, as a result . . . disputes regarding intent are generally decided after a trial/evidentiary hearing resolving such factual issues."  *Adler v. Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y. 2015).

### *The Elements of a Bankruptcy Code Section 523(a)(2)(A) Claim*

Bankruptcy Code Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement in writing respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  To prevail on a Section 523(a)(2)(A) claim, a creditor must establish five elements:  "first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation."  *In re Moses,* 547 B.R. at 35 (citing *Fleet Credit Card Servs. L.P. v. Macias (In re Macias),* 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)).

That is, the first element that the Plaintiffs must establish is that Mr. Mavrelis made a false representation to them. *In re Moses,* 547 B.R. at 36 (citing *In re Macias,* 324 B.R. at 187). The second element that the Plaintiffs must establish is that, at the time Mr. Mavrelis made the representations, he knew they were false. *Id.* (citing *In re Macias,* 324 B.R. at 188)). This element turns on the debtor's "actual state of mind . . . at the time" the misrepresentation was made. *Id.* (citing *In re Parkhurst,* 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996)). And this element is satisfied if the maker of the representation knew or believed that the matter was not as represented, did not have confidence in the accuracy of his or her representations, or knew that he or she did not have a basis to make the representations. *Id.* (citing *AT&T Universal Card Servs. v. Mercer (In re Mercer),* 246 F.3d 391, 407 (5th Cir. 2001)). As set forth in the *Restatement (Second) of Torts*:

> "A misrepresentation is fraudulent if the maker:
>
> (a)  knows or believes that the matter is not as he represents it to be,
>
> (b)  does not have the confidence in the accuracy of his representation that he states or implies, or
>
> (c)  knows that he does not have the basis for his representation that he states or implies."

*Id.* (quoting *Restatement (Second) of Torts* § 526 (1977)).

The third element that the Plaintiffs must establish is that, at the time that Mr. Mavrelis made the false representations, he did so with the intent to deceive. *In re Moses,* 547 B.R. at 37 (citing *In re Macias,* 324 B.R. at 192). This element "requires the Plaintiffs to show that Mr. Mavrelis' conduct was 'marked by moral turpitude' or that the misconduct was an 'intentional wrong.'" *Id.* (quoting *New York v. Suarez (In re Suarez),* 367 B.R. 332, 349-50 (Bankr. E.D.N.Y. 2007)). And "while recklessness may be a sufficient basis to infer knowledge, it does

not, without more, demonstrate a deliberate intention to cheat or mislead." *In re Suarez,* 367 B.R. at 350. For example, "one court found that a debtor's act of executing closing documents without reading them was reckless but did not rise 'to the level of actual fraud or deceit as required by [Section] 523(a)(2)(A).'" *In re Moses,* 547 B.R. at 37-38 (quoting *Haney v. Copeland (In re Copeland),* 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003)).

The fourth element that the Plaintiffs must establish is that they "'justifiably relied on the debtor's false representation.'" *In re Moses,* 547 B.R. at 38 (quoting *In re Macias,* 324 B.R. at 192 (citation omitted)). As the Supreme Court has made clear, a creditor must "'use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field v. Mans,* 516 U.S. 59, 71 (1995) (quoting *Restatement (Second) of Torts* § 541, Comment *a* (1977)).

The final element that the Plaintiffs must establish is that Mr. Mavrelis' misrepresentations proximately caused them to sustain loss or damage. *In re Moses,* 547 B.R. at 39 (citing *In re Macias,* 324 B.R. at 193).

*The Elements of a Bankruptcy Code Section 523(a)(4) Claim*

Bankruptcy Code Section 523(a)(4) provides that a "discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In other words, a debt arising from fraud or defalcation while acting in a fiduciary capacity may not be discharged in bankruptcy. This "'dischargeability provision has for more than a century been construed narrowly and strictly by the Supreme Court.'" *In re Moses,* 547 B.R. at 40 (quoting

*Owens v. Owens (In re Owens),* 2005 WL 387258, at *4 (S.D.N.Y. Feb. 17, 2005) (citation

omitted)).

> To succeed on a Section 523(a)(4) claim, a plaintiff must establish three elements:
>
> [F]irst, the debt must result from a fiduciary's fraud or defalcation under an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another; second, the debtor must have acted in a fiduciary capacity with respect to the trust; and third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law.

*Id.* (citing *Chao v. Duncan (In re Duncan),* 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005)).

As a consequence, here, the Plaintiffs must establish first, that the debt resulted from a

fiduciary's defalcation by Mr. Mavrelis under an express or technical trust involving the

entrusting of money or other property to him for the benefit of another.  *Id.* (citing *In re Duncan,*

331 B.R. at 77).  "An attorney-client relationship 'has long been understood to be a fiduciary

relationship within the meaning of the defalcation exception,' and satisfies this element, even

where there is no 'technical trustee or express trust.'" *Id.* (quoting *Andy Warhol Found. for

Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 168 (2d Cir. 1999)).

The second element that the Plaintiffs must establish is that Mr. Mavrelis acted in a

fiduciary capacity with respect to that trust-like relationship.  An attorney-client relationship

"'entails one of the highest fiduciary duties imposed by law'" and therefore "'without more, [an

attorney-client relationship] constitutes a fiduciary relationship within the meaning of Section

523(a)(4).'" *In re Moses,* 547 B.R. at 40-41 (quoting *In re Hayes,* 183 F.3d at 170).

The third and final element that the Plaintiffs must establish to prevail on this claim is

that the debt arose from misconduct by Mr. Mavrelis that is a "defalcation" within the meaning

of bankruptcy law.  *In re Moses,* 547 B.R. at 41 (citing *In re Duncan,* 331 B.R. at 77).  The

Supreme Court has recently clarified the meaning of this term within the bankruptcy context.  It

held that "'defalcation' in this context requires scienter, 'a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase' such as fraud, embezzlement, and larceny.'" *Id.* (quoting *Bullock v. BankChampaign, N.A. (In re Bullock),* 569 U.S. 267, 269 (2013)). *See Wang v. Gao (In re Gao),* 2015 WL 7077238 at *3 (E.D.N.Y. Nov. 12, 2015) (stating that "[d]efalcation requires 'a willful neglect of duty, even if not accompanied by fraud or embezzlement.'") (quoting *LSP Inv. P'ship v. Bennett* (*In re Bennett*), 989 F.2d 779, 790 (5th Cir. 1993)). For this element to be satisfied, "the Supreme Court has specified that the fiduciary must have acted with actual knowledge, with 'willful blindness,' or with 'bad faith, moral turpitude, or other immoral conduct.'" *Id.* (quoting *In re Bullock,* 569 U.S. at 273). The Supreme Court "rejected the notion that a broad definition of 'defalcation' should apply, noting that such a definition would capture 'even innocent acts of failure to fully account for money received in trust' and would not be appropriate in this context." *Id.* (quoting *Bullock,* 569 U.S. at 271).

The Second Circuit has held "'that defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context.'" *Id.* (quoting *Denton v. Hyman (In re Hyman),* 502 F.3d 61, 68 (2d Cir. 2007)). The Second Circuit noted that "requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation . . . insures that the harsh sanction of nondischargeability is reserved for those who exhibit 'some portion of misconduct.'" *Id.* (quoting *In re Hyman,* 502 F.3d at 68 (quotations omitted)). And the court explained that this "'standard does not reach fiduciaries [who failed in their duties] only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable.'" *Id.* (quoting *In re Hyman,* 502 F.3d at 69). *See Grow Up Japan, Inc. v. Yoshida (In*

*re Yoshida),* 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010) (noting that courts in this Circuit "require a level of fault greater than mere negligence" or "an innocent mistake.").

In other words, "a debtor must have committed an intentional wrong, which, at a minimum, involves the conscious disregard of 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *In re Moses,* 547 B.R. at 42 (quoting *Bullock,* 569 U.S. at 274). As this Court has found, "'at a minimum, a defalcation for purposes of Section 523(a)(4) must arise from conduct that justifies the substantial penalty of denial of dischargeability.'" *Id.* (quoting *In re Duncan,* 331 B.R. at 87). "Defalcation 'requires a showing of conscious misbehavior or extreme recklessness.'" *Id.* (quoting *Rahman v. Park (In re Seung Min Park),* 2011 WL 1344495, at *4 (Bankr. E.D.N.Y. Apr. 8, 2011)).

*The Elements of a Bankruptcy Code Section 523(a)(6) Claim*

In order to establish that a debt should not be discharged under Section 523(a)(6), a plaintiff must show that the debt at issue resulted from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). That is, a plaintiff must establish three elements to succeed on a Section 523(a)(6) claim – first, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property.

Notably, malice is not the same as willfulness – as another court observed, "the terms 'willful' and 'malicious' are separate elements with distinct meanings and both must be satisfied by a preponderance of the evidence." *Plaza v. Heilbron (In re Heilbron),* 2020 WL 259563, at *9 (Bankr. E.D.N.Y. Jan. 15, 2020) (citing *Cocoletzi v. Orly (In re Orly),* 2016 WL 4376947, at *3 (Bankr. S.D.N.Y. Aug. 10, 2016) (internal citations omitted)). And "'to promote the fresh start policy of the Bankruptcy Code, courts narrowly construe the exceptions to dischargeability

enumerated in § 523(a)(6).'" *Id.* (quoting *In re Orly,* 2016 WL 4376947, at *3 (citing *In re Bonnanzio,* 91 F.3d 296, 300 (2d Cir. 1996)).

As to the first element, that the debtor acted willfully, the Bankruptcy Code does not define "willful." As the Supreme Court has noted:

> The word "willful" is defined in Black's Law Dictionary as "voluntary" or "intentional." Black's Law Dictionary 1434 (5th ed. 1979). Consistently, legislative reports note that the word "willful" in § 523(a)(6) means "deliberate or intentional." *See* S. Rep. No. 95-989, p. 79 (1978) U.S. Code Cong. & Admin. News pp. 5787, 5864; H.R. Rep. No. 95-595, p. 365 (1977) U.S. Code Cong. & Admin. News pp. 5963, 6320.

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998). And as the Court concluded, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in original)).

And the Supreme Court also observed that the intent required under Section 523(a)(6) is akin to the intent required for an intentional tort – that is, "that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Kawaauhau*, 523 U.S. at 61-62 (quoting *Restatement (Second) of Torts* § 8A, comment *a*, p. 15 (1964)). The Court stated that "[an] act which 'necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously.'" *Kawaauhau*, 523 U.S. at 62-63 (quoting *Tinker v. Colwell*, 193 U.S. 473, 487 (1904)).

Considering this same element, one bankruptcy court observed that "an act is willful, for the purposes of § 523(a)(6) when an actor had actual intent to cause injury or 'was substantially certain that the injury would occur.'" *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017) (internal quotation omitted). Another noted that "[a]n act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result."

*Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 453 (Bankr. S.D.N.Y. 2015) (internal citations omitted). *See In re Alicea*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999) (stating that "'[w]illful,' as used in § 523(a)(6), means 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,' and includes conduct that the actor is substantially certain will cause injury") (internal citations omitted); *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (willfulness "includes conduct that the actor is substantially certain will cause injury") (internal citations omitted); *In re Heilbron,* 2020 WL 259563, at *9 (citing cases).

As to the second element, whether the debtor acted maliciously, the Second Circuit has concluded that the term "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87 (2d Cir. 2003)).  And "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable."  *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005).  *See In re Heilbron,* 2020 WL 259563, at *10 (citing cases).

In addition, "[m]alice may also be implied from 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"  *Yash Raj Films (USA) Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 131-32 (Bankr. E.D.N.Y. 2007) (quoting *In re Ahmed,* 359 B.R. at 42 (quoting *In re Stelluti,* 94 F.3d at 88)).  Further, "a court may find malice 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'"  *In re Akhtar*, 368 B.R. at 132 (citation omitted).

Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis. *See In re Stelluti*, 94 F.3d at 88 (stating that malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances") (internal quotations and citation omitted). "A court should look to the totality of the circumstances to determine malice." *Forrest v. Bressler (In re Bressler),* 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).

As to the third element, that the debtor's actions caused injury to the plaintiff or the plaintiff's property, here too, the term "injury" is not defined in the Bankruptcy Code. *In re Heilbron,* 2020 WL 259563, at *11. "As one court has explained, '[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable.'" *VW Credit, Inc. v. Salim (In re Salim),* 2015 WL 1240000, at *25 (Bankr. E.D.N.Y. Mar. 16, 2015), *aff'd sub nom. Salim v. VW Credit, Inc.,* 577 B.R. 615 (E.D.N.Y. 2017) (quoting *In re Ahmed,* 359 B.R. at 41).

And finally, the Plaintiffs bear the burden on each of the elements of their nondischargeability claims, and the standard of proof necessary is by a preponderance of the evidence. As the Supreme Court has stated, "we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### <u>Discussion</u>

The Plaintiffs seek summary judgment on their claims that Mr. Mavrelis' debt to them, resulting from the denial of a property tax abatement application under New York City's Industrial Commercial Abatement Program, is excluded from his bankruptcy discharge under some or all of Bankruptcy Code Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). In order to

prevail on this motion, they must establish that there is no genuine dispute as to a material fact as to each element of at least one of these claims. The Court considers each of these claims in turn.

### *Whether the Plaintiffs Have Shown that They Are Entitled to Summary Judgment on Their Bankruptcy Code Section 523(a)(2)(A) Claim*

To prevail on their Section 523(a)(2)(A) claim, the Plaintiffs must show that Mr. Mavrelis' debt was obtained "by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). And to prevail on this Motion, they must show that there is no genuine dispute as to a material fact that first, Mr. Mavrelis made a false representation; second, that he knew the representation was false at the time it was made; third, that he made the false representation with the intent to deceive them; fourth, that they justifiably relied on the false representation; and finally, that they sustained a loss that was proximately caused by Mr. Mavrelis' false representation. *See In re Moses,* 547 B.R. at 35.

As these elements make clear, the centerpiece – and the starting point – for a Section 523(a)(2)(A) claim is that Mr. Mavrelis made a false representation. Each of the remaining elements depends on this threshold aspect of their claim. Accordingly, the Court first considers whether the Plaintiffs have met their burden on summary judgment to show that there is no genuine dispute of material fact that Mr. Mavrelis made a false representation to them. If so, then the Court must consider the remaining elements of this claim. But if not, then the Plaintiffs' motion for summary judgment on this claim cannot succeed.

### Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis Made a False Representation

The first element that the Plaintiffs must establish is that Mr. Mavrelis made a false representation to them. *See In re Moses,* 547 at 36 (citing *In re Macias,* 324 B.R. at 187). The Plaintiffs argue that Mr. Mavrelis made a series of false representations. These include that:

- Mr. Mavrelis falsely stated that he was an expert in the new ICAP program, with its new one-year filing deadline, with 20 years of experience in the area of tax abatement applications;

- Mr. Mavrelis falsely stated that he timely filed the tax abatement application for the Property, and then later admitted in his deposition that it was not;

- Mr. Mavrelis falsely reported on the status of the application, including by falsely stating that the City of New York had not yet made a final ruling on it and by concealing his efforts to get the denial overturned; and

- Mr. Mavrelis did not tell the Plaintiffs that he did not have malpractice insurance.

Plfs' Mem. at 13.

The first of these alleged false statements is that Mr. Mavrelis falsely stated that he was an expert in the new ICAP program, with its new one-year filing deadline, with 20 years of experience in the area of tax abatement applications.

Here, the record shows that when the Plaintiffs retained Mr. Mavrelis, the ICAP program had not yet come into existence.  And the evidence advanced by the Plaintiffs, including the deposition testimony of Mr. Mavrelis and statements from his website concerning his expertise, does not point to a particular statement made by Mr. Mavrelis at the time of his retention to this effect.  Indeed, as Mr. Mavrelis points out, the preliminary application, filed in March 2008, was made under the previous ICIP program, not the ICAP program.  Def's Opp. at 9.  That is, the Plaintiffs have not established the absence of a genuine dispute of material fact with respect to Mr. Mavrelis' alleged statements to them concerning his expertise in the ICAP program, or his years of expertise in the area of tax abatement applications.

The second of these alleged false statements is that Mr. Mavrelis falsely stated to the Plaintiffs and their representatives that he timely filed the tax abatement application for the Property.  The Plaintiffs describe a series of e-mails between Mr. Mavrelis and them, and note that in February 2013, their representative was advised "that the Defendant was away," and in

April 2013, the Defendant stated "'I have yet to receive an official reply to this file.  I see the TC of O was received February 4, 2013.'"  Plfs' Mem. at 11.[4]

In response, Mr. Mavrelis denies that he ever told the Plaintiffs or their representatives that the ICIP application was timely filed, and argues that there "is no basis for this statement anywhere in the record."  Def's Opp. at 9 (citing Mavrelis Depo. at 89-92).  To the contrary, he argues that during his deposition in the State Court Action, he testified that he met with the Plaintiffs in February 2012 to discuss the fact that the final application filing deadline had already passed, and that the parties decided to file the final application regardless.  Def's Opp. at 9 (citing Mavrelis Depo. at 40, 89-90).

Here, the record shows that the evidence is far from clear as to whether Mr. Mavrelis stated to the Plaintiffs that the ICAP application was timely filed.  While the parties agree that the application was *not*, in fact, filed within the one-year period required under the new ICAP program, they disagree as to why this occurred, and in that context, point to contradictory evidence in the record as to what Mr. Mavrelis and the Plaintiffs discussed.  Here too, the Plaintiffs have not established that there is no genuine dispute of material fact with respect to Mr. Mavrelis' alleged false statements to them that he timely filed the tax abatement application for the Property.

The third of these alleged false statements is that Mr. Mavrelis falsely reported on the status of the application, including by falsely stating that the City of New York had not yet made

---

[4]  The Plaintiffs also allege in the Complaint that Mr. Mavrelis stated in a November 16, 2012 e-mail that the final application was filed on February 28, 2011, and not on March 6, 2012, as stamped on the filed copy, but do not refer to this e-mail in their Motion.  *See* Compl. ¶ 54 (alleging above conduct).

a final ruling on it when it had already been denied as untimely, and by concealing his efforts to get the denial overturned.

The Plaintiffs argue that Mr. Mavrelis made false representations by hiding the fact that he was trying to get the ICAP denial overturned by the City of New York and continuing to tell the Plaintiffs that City of New York had not yet ruled on their application. They point to the fact that Mr. Mavrelis sought a second review of the ICAP application in 2012, and received an e-mail from the Department of Finance on August 6, 2012, indicating that the relevant building permit was issued, and the one-year period began to run, in 2010. As quoted in the Plaintiffs' moving brief, that e-mail states:

> Please be advised that after reviewing the application for the second time based on the information you provided, it became obvious that the first and only NB work permit issued on this project was issued after Preliminary Application (PA) was filed. Under the rule, this simply denotes that such work permit musts be retained as the effective date regardless of any other changes that may come along the way as the project remains in process. If the plan was amended and the construction redirected as a result of any reason – that is permissible – it will however not excuse the fact that the construction commenced in 2010 under a NB work permit issued in 2010.

Plfs' Mem. at 10-11. The Plaintiffs further state that, at a later, unspecified time, Mr. Mavrelis was told:

> [A] final application should have been filed within one year of such issuance even if the permit was to be amended with a change in structural plan later. Unfortunately, following all the above as required by the prevailing provision, I am not at a free position to reverse the denial decision.

Plfs' Mem. at 11.

The Plaintiffs argue that the record shows that Mr. Mavrelis "hid from [them] the fact that the application was rejected for being filed late, and his efforts to have the City change that ruling." Plfs' Mem. at 11. They state that in approximately February 2013, their representative

inquired by e-mail about the status of the ICAP application, and was advised that Mr. Mavrelis was away.

Next, they state that they inquired by letter dated March 1, 2013 to Mr. Mavrelis about the status of the ICAP application, and that eventually, on April 17, 2013, Mr. Mavrelis responded by e-mail that "I have yet to receive an official reply to this file." Plfs' Mem. at 11. They characterize this as a "blatant lie and breach of his duty to his client to communicate as a fiduciary." Plfs' Mem. at 11. And they note that Mr. Mavrelis did not advise them of the denial of the ICAP application until some weeks later, by an e-mail on May 16, 2013.

It is clear from the Plaintiffs' arguments that, viewed through the lens of hindsight, they believe that Mr. Mavrelis misled them with respect to the status of the ICAP application, including the denial of the application and his efforts to have that denial overturned. But here again, the record is far from clear as to what was said by Mr. Mavrelis to the Plaintiffs, and whether any of his statements amount to false representations with respect to the status of the application. For these reasons, and here again, the Plaintiffs have not established that there is no genuine dispute of material fact with respect to Mr. Mavrelis' alleged false reports on the status of the ICAP application, including false statements to the effect that the City of New York had not yet made a final ruling on it, and his concealment of his efforts to get the denial overturned.

The fourth of these alleged false statements is more in the nature of an omission – that Mr. Mavrelis made a false representation in that he "did not tell the Plaintiffs that he did not have malpractice insurance." Plfs' Mem. at 13. As one respected commentator notes, "[a] debtor's silence regarding a material fact can constitute a false representation under" this Section. 4 Collier on Bankruptcy ¶ 523.08[1][d] at 523-46 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev.). And as former Chief Judge Brozman observed, "silence regarding a material fact may in

some cases be sufficient to constitute the requisite falsity" for purposes of a nondischargeability claim. *Charell v. Gonzalez (In re Gonzalez),* 241 B.R. 67, 74 (Bankr. S.D.N.Y. 1999) (Brozman, C.J.). *See Caspers v. Van Horne,* 823 F.2d 1285, 1288 (8th Cir. 1987) (concluding that a debtor's silence as to a material fact can constitute a false representation under Section 523(a)(2)(A)) (citing cases); *Minority Equity Capital Corp. v. Weinstein*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983) (observing that "[i]t is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A)").

In response, Mr. Mavrelis acknowledges that he "did not have malpractice insurance at the time and there was no conversation between the parties relating to malpractice insurance." Def's Mem. at 10. But he also notes that the Plaintiffs do not identify "any requirement that an attorney needs to carry malpractice insurance," or point to any "affirmative duty imposed on an attorney to clients relating to malpractice insurance." Def's Mem. at 10.

Here, the record shows that the Plaintiffs have shown – and the parties agree – that when the Plaintiffs retained him as their counsel, Mr. Mavrelis did not have malpractice insurance, and did not disclose that fact to them. But viewed in the light of the requirements of their Section 523(a)(2)(A) nondischargeability claim, the Plaintiffs have not shown that Mr. Mavrelis' omission to inform them that he did not have malpractice insurance was in the nature of the requisite "silence regarding a material fact," as courts and commentators have found. They do not allege or argue that they raised the question of malpractice insurance with Mr. Mavrelis at the time of his retention, nor do they connect this asserted – and acknowledged – omission to the late filing of the tax abatement application for the Property. That is, the Plaintiffs have not established that there is no genuine dispute of material fact with respect to whether Mr. Mavrelis'

alleged failure to tell the Plaintiffs that he did not have malpractice insurance amounts to a material omission in the context of their claim.

*        *        *

In sum, the Plaintiffs have not shown that there is no genuine dispute of material fact as to any of the alleged false representations that they have identified as the foundation of their Section 523(a)(2)(A) claim.  And as noted above, each of the remaining elements depends on this threshold aspect of their claim.  Accordingly, the Court finds that the Plaintiffs have not met their burden on summary judgment to show that there is no genuine dispute of material fact that Mr. Mavrelis made a false representation to them, and as a consequence, their motion for summary judgment on this claim cannot succeed.  For these reasons, and based on the entire record, the Plaintiffs' motion for summary judgment on their Section 523(a)(2)(A) claim is denied.

### *Whether the Plaintiffs Have Shown that They Are Entitled to Summary Judgment on Their Bankruptcy Code Section 523(a)(4) Claim*

To prevail on their Section 523(a)(4) claim, the Plaintiffs must show that the debt arose from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  And to prevail on this Motion, they must show that there is no genuine dispute as to a material fact that first, the debt resulted from Mr. Mavrelis' fraud or defalcation while acting as a fiduciary under an express or technical trust involving the entrusting of money or other property to him for the benefit of another; second, that Mr. Mavrelis acted in a fiduciary capacity with respect to the trust; and third, the transaction in question is a "defalcation" within the meaning of bankruptcy law.  *See In re Moses,* 547 B.R. at 40 (citing *In re Duncan,* 331 B.R. at 77).  Where, as here, the claim arises from services performed by an attorney for a client, these elements are, in substance, that the debtor was serving in an attorney-client relationship with the

35

plaintiff; that the alleged fraud or defalcation occurred in the context of that relationship; and finally, that the conduct amounts to a fiduciary defalcation as defined by bankruptcy law.

The Plaintiffs argue that, while acting in a fiduciary capacity as their attorney, Mr. Mavrelis committed several acts of fraud and defalcation.  These allegations align substantially with the Plaintiffs' allegations of Mr. Mavrelis' asserted misrepresentations.  The first fraud, the Plaintiffs state, occurred when Mr. Mavrelis held himself out as an expert in the ICAP program with 20 years' experience, while he knew that in fact, he had no expertise in the new ICAP program.  Plfs' Mem. at 16.  The Plaintiffs again note that three lawsuits have been brought against Mr. Mavrelis relating to the ICAP program.  Another fraudulent act, they argue, was that Mr. Mavrelis "knew the application was filed late but did not tell his clients."  Plfs' Mem. at 16. Additionally, they argue, Mr. Mavrelis knew that the ICAP application was filed late, beyond the strict one-year deadline imposed by the ICAP program, yet did not tell the Plaintiffs, hid the City's denial of the application, and told them that he was awaiting a final response from the City at a time when he knew that the denial had been upheld.  Plfs' Mem. at 16.  And finally, they argue that Mr. Mavrelis knew that he had no malpractice insurance at the time of his retention, yet fraudulently failed to disclose this fact to them.  Plfs' Mem. at 16.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that the Debt Was Incurred in Connection with an Express or Technical Trust</u>

The first element that the Plaintiffs must establish is that the debt resulted from Mr. Mavrelis' fiduciary defalcation under an express or technical trust involving the entrusting of money or other property to him for the benefit of another.  *See In re Moses,* 547 B.R. at 40 (citing *In re Duncan,* 331 B.R. at 77)).  "An attorney-client relationship 'has long been understood to be a fiduciary relationship within the meaning of the defalcation exception,' and satisfies this element, even where there is no 'technical trustee or express trust.'"  *Id.* (quoting

*Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 168 (2d Cir. 1999) (citations omitted)).

Here, the record shows that the Plaintiffs retained Mr. Mavrelis as their attorney for the purpose of filing a tax abatement application for the Property on or about March 19, 2008, creating an attorney-client relationship between them.  And this relationship, in turn, creates the fiduciary relationship and duty that satisfies this element.

As a result, the Plaintiffs have shown that Mr. Mavrelis acted as their fiduciary, and therefore, they have also shown that there is no genuine dispute of material fact as to the first element of their Section 523(a)(4) claim, that the debt was incurred in connection with an express or technical trust.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis Acted in a Fiduciary Capacity with Respect to that Trust</u>

The second element that the Plaintiffs must establish is that Mr. Mavrelis acted in a fiduciary capacity with respect to the trust-like relationship.  "An attorney-client relationship 'entails one of the highest fiduciary duties imposed by law' and therefore 'without more, [an attorney-client relationship] constitutes a fiduciary relationship within the meaning of Section 523(a)(4).'"  *In re Moses,* 547 B.R. at 40-41 (quoting *In re Hayes,* 183 F.3d at 170).

And here too, the record shows that the Plaintiffs retained Mr. Mavrelis as their attorney to seek a tax abatement for the Property.  The record also shows that each of the alleged actions took place in the context of that attorney-client relationship.  That is, to the extent that each of these alleged actions is established by the record, it seems clear that it occurred in the course of Mr. Mavrelis' actions as attorney and fiduciary for the Plaintiffs.

But as described above, the record also shows that, at this stage in these proceedings, the Plaintiffs have not shown that there is no genuine dispute of material fact as to these alleged

circumstances, whether they are viewed as false representations or omissions, or as fraudulent actions.  They have not established that Mr. Mavrelis made statements to them at the time of his retention with respect to his asserted expertise in the ICAP program.  Nor have they shown that Mr. Mavrelis stated that he timely filed the tax abatement application for the Property, or that he misled them as to the status of the application.  And finally, they have not established that Mr. Mavrelis' failure to inform them that he lacked malpractice insurance was a material omission or fraudulent act in the context of this claim.

As a result, the Plaintiffs have not shown that there is no genuine dispute of material fact that Mr. Mavrelis took each – or any – of the alleged actions, and therefore, they have not shown that he did so in the context of their attorney-client relationship.  That is, they have not shown that there is no genuine dispute of material fact as to the second element of their Section 523(a)(4) claim, that the actions at issue occurred in the context of Mr. Mavrelis' work as their attorney, or put another way, that the debt was incurred in connection with an express or technical trust.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis' Conduct Is a Fraud or Defalcation Within the Meaning of Bankruptcy Law</u>

The third and final element that the Plaintiffs must establish to prevail on a Section 523(a)(4) claim is that the debt arose from misconduct that is a "defalcation" within the meaning of bankruptcy law.  *See In re Moses,* 547 B.R. at 51 (citing *In re Duncan,* 331 B.R. at 77).  This requires the Plaintiffs to demonstrate that, with respect to at least one of the alleged fraudulent acts, Mr. Mavrelis committed an "an intentional wrong, which, at a minimum, involve[d] the conscious disregard of 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty."  *In re Moses,* 547 B.R. at 42 (quoting *Bullock,* 569 U.S. at 274).

The Plaintiffs argue that Mr. Mavrelis committed a fraud or fiduciary defalcation when he made statements to them at the time of his retention with respect to his asserted expertise in the ICAP program, when he stated that he timely filed the tax abatement application for the Property, when he misled them as to the status of the application, and when he failed to inform them that he lacked malpractice insurance.  And they assert:

> [T]here must be scienter or a culpable state of mind. . . . Mavrelis knew he had no expertise in the new ICAP and yet he held himself out as an expert with 20 years' experience.  He knew he had no malpractice insurance, yet he did not tell the Plaintiffs.  He knew the application was filed late but did not tell his clients and he then hid the fact the was trying to get the denial overturned.  Three lawsuits against [him] all arise from the new ICAP.  He knew when he told his clients he was waiting to hear from the City of New York, that that was not true.  This [was] not innocent negligence . . .

Plfs' Mem. at 16.

The Plaintiffs conclude that "[t]hese representations [were] made with an intent to deceive and the worst self-interest of a lawyer against his client . . . he decided to protect his financial interests in charging fees and avoiding malpractice claims."  Plfs' Mem. at 17.

Here, the record shows that, at the outset, the Plaintiffs have not established that there is no genuine dispute of material fact with respect to these matters, whether they are viewed as false representations or omissions, or as fraudulent actions.  In addition, the Plaintiffs have not pointed to substantial persuasive evidence in the record that, at this stage in these proceedings, supports the conclusion that Mr. Mavrelis committed an "an intentional wrong, which, at a minimum, involve[d] the conscious disregard of  'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty."  *In re Moses,* 547 B.R. at 42 (quoting *Bullock,* 569 U.S. at 274).

As a result, and here too, the Plaintiffs have not shown that there is no genuine dispute of material fact that Mr. Mavrelis took each – or any – of the alleged actions, and therefore, they

have not shown that he did so with the requisite fraudulent or defalcatory intent.  That is, they have not shown that there is no genuine dispute of material fact as to the third element of their Section 523(a)(4) claim, that Mr. Mavrelis' conduct is a fraud or defalcation within the meaning of bankruptcy law.

*          *          *

In sum, the Plaintiffs have shown that there is no genuine dispute of material fact with respect to the first element of their Section 523(a)(4) claim – that the debt was incurred in connection with an express or technical trust – because they retained Mr. Mavrelis as their attorney, and the alleged events and circumstances occurred in the course of that representation and attorney-client relationship.

But the Plaintiffs have not shown that there is genuine dispute of material fact with respect to the second element of their Section 523(a)(4) claim, that Mr. Mavrelis acted in a fiduciary capacity with respect to these matters, because they have not shown that there is no genuine dispute of material fact that Mr. Mavrelis took any of these alleged actions.  Nor have they established the third element of their Section 523(a)(4) claim, that Mr. Mavrelis acted with necessary culpable intent, including the conscious disregard of "'a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty.'"  *In re Moses,* 547 B.R. at 42 (quoting *Bullock,* 569 U.S. at 274).

For these reasons, and based on the entire record, the Plaintiffs' motion for summary judgment on their Section 523(a)(4) claim is denied.

### *Whether the Plaintiffs Have Shown that They Are Entitled to Summary Judgment on Their Bankruptcy Code Section 523(a)(6) Claim*

To prevail on their Section 523(a)(6) claim, the Plaintiffs must show that the debt arose from a "willful" and "malicious" act which caused injury to them or to their property.  11 U.S.C.

§ 523(a)(6).  And to prevail on this Motion, they must establish that there is no genuine dispute of material fact with respect to each of three elements of this claim.  That is, they must show that there is no genuine dispute as to a material fact that Mr. Mavrelis acted willfully, that he acted maliciously, and that his willful and malicious acts caused injury to them or their property.

The Plaintiffs argue that "[t]here really is little doubt that Attorney Mavrelis acted willfully [when he] injured the Plaintiffs and the injury was intended from his conduct.  This was deliberate and intentional injury."  Plfs' Mem. at 18.  Here too, they point to substantially the same series of alleged misrepresentations and fraudulent acts that they identify in the context of their Section 523(a)(2)(A) and 523(a)(4) claims.  They urge that Mr. Mavrelis willfully and maliciously injured them when he "held himself out as expert in the ICAP [program] when he was not," when he "did not tell his clients he lacked malpractice insurance," and when he "failed to tell them [the] application was denied."  Plfs' Mem. at 18.  They conclude that these were "not innocent mistakes," but part of "the whole ugly history."  Plfs' Mem. at 18.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis Acted Willfully</u>

The first element that the Plaintiffs must establish is that Mr. Mavrelis acted willfully.  As the Supreme Court has observed, as with an intentional tort, this requires "that the actor intend 'the *consequences* of an act,'" as well as "'the act itself.'"  *Kawaauhau*, 523 U.S. at 61-62 (quoting *Restatement (Second) of Torts* § 8A, comment *a*, p. 15 (1964)).  And as this Court has noted in the context of a Section 523(a)(6) claim, "'[an] act which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously.'"  *In re Heilbron,* 2020 WL 259563, at *9 (quoting *Kawaauhau*, 523 U.S. at 62-63).  As another bankruptcy court found, willfulness "includes conduct that the actor is substantially certain will cause injury."  *In re Mitchell*, 227 B.R. at 51 (internal citations omitted).

41

Here too, the record shows that at this stage in these proceedings, the Plaintiffs have not shown that there is no genuine dispute of material fact as to these alleged circumstances.  They have not established that Mr. Mavrelis described himself as an expert in the ICAP program at the time of his retention, or that he failed to keep them informed of the status of the tax abatement application for the Property, including that it was denied.  In addition, they have not shown that Mr. Mavrelis' failure to inform them that he lacked malpractice insurance was a material omission or willful act in the context of this claim.  And finally, it is plain from the record that the Plaintiffs have not shown that in the context of any of these circumstances,  Mr. Mavrelis engaged in intentional conduct that "[he] is substantially certain will cause injury."  *Id.*

As a result, the Plaintiffs have not shown that there is no genuine dispute of material fact that Mr. Mavrelis took any of these asserted actions, and therefore, they have not shown that he did so with the requisite willfulness.  That is, they have not shown that there is no genuine dispute of material fact as to the first element of their Section 523(a)(6) claim, that Mr. Mavrelis acted willfully.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis Acted Maliciously</u>

The second element that the Plaintiffs must establish is that Mr. Mavrelis acted maliciously.  The requirement of maliciousness is distinct from that of willfulness.  As the Second Circuit has found, "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball*, 451 F.3d at 69 (quoting *In re Stelluti,* 94 F.3d at 87).  And as this Court has noted, "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable."  *In re Ahmed*, 359 B.R. at 41.

But while this element is distinct, the Plaintiffs' arguments fall short here for substantially the same reasons as they do in the context of the first element of this claim.  This is because here again, the record shows that at this stage in these proceedings, the Plaintiffs have not shown that there is no genuine dispute of material fact as to these alleged circumstances.  In addition, they have not shown that in the context of any of these circumstances,  Mr. Mavrelis engaged in intentional conduct that was "'wrongful and without just cause or excuse.'"  *Ball*, 451 F.3d at 69 (quoting *In re Stelluti,* 94 F.3d at 87).

As a result, the Plaintiffs have not shown that there is no genuine dispute of material fact that Mr. Mavrelis took any of these asserted actions, and therefore, they have not shown that he did so maliciously.  That is, they have not shown that there is no genuine dispute of material fact as to the second element of their Section 523(a)(6) claim, that Mr. Mavrelis acted maliciously.

<u>Whether the Plaintiffs Have Shown that There Is No Genuine Dispute of Material Fact that Mr. Mavrelis' Willful and Malicious Acts Caused Injury to Them or Their Property</u>

The third element that the Plaintiffs must establish is that Mr. Mavrelis' willful and malicious actions caused injury to them or to their Property.  The term "injury" is not defined in the Bankruptcy Code, but it is certainly broad enough to encompass the kind of injury that the Plaintiffs have described here – that is, the lost opportunity to realize the substantial benefits of a real estate tax abatement on the Property.

But of course, injury alone is not enough, either for liability under Bankruptcy Code Section 523(a)(6) or for satisfaction of this third element of a claim under that Section.  The predicate for consideration of that injury is proof of willful and malicious acts, and proof that those acts caused the injury at issue.

And here again, the record shows that at this stage in these proceedings, the Plaintiffs have not shown that there is no genuine dispute of material fact as to these alleged circumstances – that is, they have not established that Mr. Mavrelis described himself as an expert in the ICAP program at the time of his retention, or that he failed to keep them informed of the status of the tax abatement application for the Property, including that it was denied, or that his failure to inform them that he lacked malpractice insurance was a material omission or willful act in the context of this claim.  Nor have they shown that in the context of any of these circumstances, he engaged in intentional conduct that was willful and malicious.  Equally important, the Plaintiffs have not shown that there is a causal connection between Mr. Mavrelis' alleged conduct and their asserted injury.

*           *           *

In sum, the Plaintiffs have not shown that there is no genuine dispute of material fact with respect to any of the elements of their Section 523(a)(6) claim.  For these reasons, and based on the entire record, the Plaintiffs' motion for summary judgment on their Section 523(a)(6) claim is denied.

## Conclusion

For the reasons set forth herein, and based on the entire record, the Plaintiffs' Motion for Summary Judgment is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
October 1, 2020

                       Elizabeth S. Stong
           United States Bankruptcy Judge